**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DONNA VEEDER, STACY VEEDER and**
**BRENDAN VEEDER,**

                                **Plaintiffs,**

  vs.                                                       1:10-cv-00665
                                                                (MAD/DRH)

**STEVEN NUTTING, Individually and in his**
**Official Capacity as an Investigator for the**
**New York State Police; JOHN DOE #1 (The**
**name being fictitious but intended to represent an**
**Employee of New York State Police), Individually**
**and in his/her Official Capacities as an Employee of**
**the New York State Police; DAVID BURNS, Individually**
**and in their Official Capacity as Investigators for the**
**New York State Police; ROBERT J. MARTIN, Individually**
**and in their Official Capacity as Investigators for the New**
**York State Police; KELLY STRACK, Individually and in**
**their Official Capacity as Investigators for the New York**
**State Police; DREW McDONALD, Individually and in their**
**Official Capacity as Investigators for the New York State**
**Police; GEORGE PORT, Individually and in their Capacity**
**as Lieutenants for the New York State Police; BRENT GILLIAM,**
**Individually and in their Capacity as Lieutenants for the New**
**York State Police; BRIAN VALOZE, Individually and in their**
**Capacity as Employees of the New York State Police; TIMOTHY**
**HARD, Individually and in their Capacity as Employees of the**
**New York State Police; STEPHEN HOGAN, Individually and in**
**their Capacity as an Attorney for the New York State Police;**
**JOHN DOE 7, (the name being fictitious but intended to represent**
**one or more employees of the Albany County District Attorney's Office),**
**Individually and in the Official Capacity as an Assistant District Attorney**
**for the County of Albany, New York,**

                                **Defendants.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

**OFFICE OF KEITH F. SCHOCKMEL**         **KEITH F. SCHOCKMEL, ESQ.**
4 Atrium Drive
Suite 290, Executive Woods
Albany, New York 12205
Attorneys for Plaintiffs

| | |
|---|---|
| **OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL** <br> The Capitol <br> Albany, New York 12224 <br> Attorneys for Defendants, Steven Nutting; <br> John Doe #1; David Burns; Robert J. Martin; <br> Kelly Strack; Drew McDonald; George Port; <br> Brent Gilliam; Brian Valoze; Timothy Hard; <br> and Stephen Hogan | **KELLY L. MUNKWITZ, AAG** <br> **MICHAEL G. McCARTIN, AAG** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On June 8, 2010, Plaintiffs commenced this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants acted in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Currently before the Court is Defendants' motion for partial judgment on the pleadings. *See* Dkt. No. 40-1.

### II. BACKGROUND

On or about May 23, 2008, Garry Veeder, a civilian employee of the New York State Police, committed suicide in a detached outbuilding of his home. *See* Dkt. No. 27 at ¶ 20. Garry Veeder lived with his wife, Donna Veeder, and their two children, Stacy and Brendan Veeder, all Plaintiffs in the present action. *See id.* Plaintiff Donna Veeder discovered Garry Veeder's body, and a call was placed to the Albany County Sherriff's Department. *See* Dkt. No. 27 at ¶ 21. The Sherriff's Department responded to the scene, along with Emergency Medical Technicians ("EMTs"). *See id.*

At some point while Plaintiff Donna Veeder was in her house, a separate building from where Garry Veeder was discovered, she "noticed a notebook with a sticky-note on the outside

2

addressed to [her] and her husband's attorney." *See id.* at ¶ 24. The notebook contained documents for the attorney, as well as "sealed envelopes addressed to each [P]laintiff" and additional family members. *See id.* at ¶ 25. Upon discovery of the notebook, Plaintiff Donna Veeder also became aware of the fact that "all members of the Sheriff's Department . . . had suddenly left the premises." *See id.* at ¶ 26. Plaintiff Donna Veeder, assuming she was alone, then carried the notebook upstairs, "so that the family could read the letters addressed to them when they became able." *See id.* at ¶ 27. At this time, Plaintiff Donna Veeder became startled by the presence of an unknown individual in her home, later identified as Defendant Steven Nutting, Investigator for the New York State Police. *See id.* at ¶ 29. Defendant Nutting was not wearing a uniform at the time. *See id.* Plaintiff Donna Veeder stated to Defendant Nutting, "[w]ho are you and what are you doing in my house?" *See id.* In response, Defendant Nutting handed Plaintiff Donna Veeder an identification card, but he allegedly "refused to explain" why he was there. *See id.* at ¶ 31. Defendant Nutting then "ordered [Plaintiff] Donna Veeder to turn over the notebook containing the letters [to him] . . . stating that it was 'evidence.'" *See id.* at ¶ 32. When Plaintiff Donna Veeder refused, replying that the notebook was "her property" and stating that the letters inside were "addressed to her" and other family members, Defendant Nutting then allegedly stated "I can do anything I want, lady, this is a crime scene until I say otherwise." *See id.* at ¶¶ 33-34. Defendant Nutting did not allow Plaintiff Donna Veeder to open any of the envelopes. *See id.* at ¶¶ 35-36.

At this point, Plaintiff Donna Veeder "became aware that other [D]efendants were conducting a room by room search of her house." *See id.* at ¶ 37. No Plaintiff had invited any Defendant into their home, and no Plaintiff had granted any Defendant permission to conduct a search. *See id.* at ¶ 38. Two Defendants, one of whom was Defendant Martin, then followed

3

Plaintiff Stacy Veeder into Plaintiff Brendan Veeder's bedroom, where she was typing an e-mail to her boyfriend. *See id.* at ¶ 39. Defendant Martin advised Plaintiff Stacy Veeder that her computer was "evidence," and asked if her father had left a note on the computer. *See id.* at ¶ 40. Plaintiff Stacy Veeder, attempting to get away from Defendant Martin, left her brother's room and went into her own bedroom. *See id.* at ¶ 41. Defendant Martin then followed Plaintiff Stacy Veeder into her bedroom. *See id.* at ¶ 42. Plaintiff Stacy Veeder continued to try and get away from Defendant Martin and the other unidentified Defendant who were "following her from room to room," but was unsuccessful. *See id.* at ¶ 43. Defendant Martin and the other Defendant then allegedly forced Plaintiff Stacy Veeder into an unmarked police automobile, which she attempted to exit but could not because Defendant Martin was holding the door shut. *See id.* at ¶¶ 44-45.

At this time, Plaintiff Donna Veeder telephoned her attorney "for advice with regard to [D]efendant Nutting's demand that the notebook and letters . . . be given to him." *See id.* at ¶ 50. Plaintiff Donna Veeder's attorney advised her not to surrender the material to Defendant Nutting. *See id.* Plaintiff Donna Veeder's attorney then spoke with Defendant Nutting on the phone and told him that "he did not have permission to take the notebook and letters." *See id.* at ¶ 51. Defendant Nutting allegedly stated that "I can do anything I want, this is a crime scene unless I say otherwise." *See id.* at ¶ 52. Defendant Nutting then assisted Plaintiff Donna Veeder in contacting her daughter, who was stationed on an Army base at the time, to inform her of her father's death. *See id.* at ¶¶ 53-54.

After this, Defendant Nutting placed a phone call to Defendant Hogan, attorney for the New York State Police, to consult with him. *See id.* at ¶ 61. Defendant Hogan "authorized [D]efendant Nutting to search the [P]laintiffs' home without a warrant, [despite] [P]laintiffs' objection." *See id.* Defendant Hogan also authorized Defendant Nutting to "seize any items he

wished from [P]laintiffs' home." *See id.* at ¶ 65. Defendant Nutting then placed a second phone call to Defendant "John Doe7," an Assistant District Attorney, who authorized Defendant Nutting to search the Plaintiff's home without a warrant and "seize any items he wished." *See id.* at ¶¶ 63, 67. At this point, Defendant Nutting told Plaintiffs to get dressed and leave the house. *See id.* at ¶ 69. Over Plaintiff Donna Veeder's objection, Defendant Nutting "took the notebook and letters away from [her]." *See id.* at ¶¶ 75, 76.

Plaintiffs then went to stay at a friend's house until Plaintiff Donna Veeder's afternoon doctor's appointment. *See id.* at ¶ 78. At the appointment, Plaintiff Donna Veeder was diagnosed with "dangerously elevated blood pressure requiring immediate attention." *See id.* at ¶ 79. After the appointment, Plaintiff Donna Veeder received a phone call from her brother stating that he had "just read an article on the internet describing the contents of the notes which [D]efendant Nutting had taken from [P]laintiffs." *See id.* at ¶ 80. Additionally, local television news stations also reported on the "contents of the notes taken from [P]laintiffs." *See id.* at ¶ 81. Plaintiffs then returned to their home and discovered that Defendants had "conducted a thorough search of [their] home and taken a briefcase" that belonged to Plaintiff Donna Veeder. *See id.* at ¶ 82. At no time was any warrant to search or seize Plaintiffs' property issued. *See id.* at ¶¶ 83, 85.

On May 23, 2008, at approximately 3:30 p.m., the Albany County Coroner officially ruled Garry Veeder's death a suicide. *See id.* at ¶ 89. On May 27, 2008, Defendant George Port, Lieutenant for the New York State Police, opened and photocopied the letters that Garry Veeder had left for his family and attorney, and retained the copies. *See id.* at ¶ 90.

5

## III. DISCUSSION

**A.     Standard of Review**

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983).  Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained.  *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)).  As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions.  *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)) (other citation omitted).

The Rule 12(c) standard for judgment on the pleadings is essentially the same as the standard that courts apply to a motion to dismiss under Rule 12(b)(6).  *See Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009) (quotation omitted).  A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50

(2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.      Official Capacity**

Plaintiffs commenced this civil rights action against five Defendants in their official capacities as Investigators for the New York State Police, two Defendants in their official capacities as Lieutenants for the New York State Police, two Defendants in their official

7

capacities as employees of the New York State Police, one Defendant in his official capacity as an attorney for the New York State Police, and one Defendant in his official capacity as an Assistant District Attorney for the County of Albany, New York. *See* Dkt. No. 27 at 1.

The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90-100 (1984). It is well-settled that states are not "persons" under section 1983 and, therefore, that statute does not abrogate a state's Eleventh Amendment immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Moreover, this immunity extends to state agencies and state officials sued in their official capacities. *See Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 292 (2d Cir. 1996) (quotation omitted). The limited exception which allows federal courts to provide prospective injunctive relief is inapplicable here, as its purpose is to "prevent or stop state officials from committing continuing violations of federal law." *TA v. Neimes*, 927 F. Supp. 977, 978 (W.D. Tex. 1996) (citation omitted).

Here, the alleged violations have already occurred and Plaintiffs do not argue that they are entitled to prospective injunctive relief. Therefore, the Court grants Defendants' motion to dismiss the New York State Defendants in their official capacities.

**C.    Personal Involvement**

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions

8

attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)) (other citation omitted).

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation and citations omitted). "'[W]hen monetary damages are sought under § 1983, the [] doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.'" *Id*. (quotation omitted). There is a sufficient showing of personal responsibility of a defendant if (1) the defendant directly participated in the alleged constitutional deprivation; (2) the defendant is a supervisory official who failed to correct the wrong after learning about it through a report or appeal; (3) the defendant is a supervisory official who created a policy or custom under which the constitutional deprivation occurred, or allowed such a policy or custom to continue; or (4) the defendant is a supervisory official that was grossly negligent in managing subordinates who caused the constitutional deprivation. *See Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted).

In the present matter, the only allegation against Defendants Burns, Strack, McDonald, Gilliam, Valoze, Hard and John Doe1 is that they are all employed, in some capacity, by the New York State Police. *See* Dkt. No. 27 at ¶¶ 9, 10, 12, 13, 15-17. Plaintiffs do not allege that these

9

Defendants engaged in any of the alleged unconstitutional conduct, or that they engaged in any conduct that would subject them to supervisory liability. As such, the Court finds that the complaint does not plausibly allege that Defendants Burns, Strack, McDonald, Gilliam, Valoze, Hard and John Doe1 were personally involved in the alleged unconstitutional conduct.

Based on the foregoing, the Court grants Defendants' motion for judgment on the pleadings as to Defendants Burns, Strack, McDonald, Gilliam, Valoze, Hard and John Doe1. *See Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009).

Regarding Defendants Port, Martin, and Nutting, however, the Court finds that Plaintiffs have plausibly alleged their personal involvement in the alleged unconstitutional conduct. *See* Dkt. No. 27 at ¶¶ 8, 11, 14, 30, 31, 35, 36, 39-45, 50-61, 63, 65, 67, 69, 71, 75, 80, 90, and 114.

### D.   Plaintiffs' Fourth Amendment Seizure Claims[1]

The Fourth Amendment protects individuals in their homes "against unreasonable searches and seizures." U.S. Const. amend. IV. "A warrantless search is 'per se unreasonable . . . subject to only a few specifically established and well-delineated exceptions.'" *United States v. Elliott*, 50 F.3d 180, 185 (2d Cir. 1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)).

---

[1] Defendants concede in footnote 1 of their memorandum of law that Counts I-V, VII-IX and XI are sufficiently plead, however "vehemently deny that the search of [P]laintiffs' house was without consent." Defendants state that at the "appropriate time" they will provide the Court with a "consent signed by [P]laintiff Donna Veeder." *See* Dkt. No. 40-1 at 4, n.1.

10

### *1. Plaintiffs' Fourth Amendment Seizure of Property Claims*

Plaintiffs allege in Count III that, by seizing the personal possessions of Plaintiffs Donna Veeder, Stacy Veeder and Brendan Veeder, and forcibly removing these possessions from their home, Defendants' deprived Plaintiffs of property without due process of law in violation of Plaintiffs' constitutional rights as guaranteed in the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as well New York State's Constitution. *See id.* at ¶ 94. Plaintiffs further allege in Count IX and Count X that Defendant Hogan and Defendant "John Doe7," in authorizing the seizure of Plaintiffs' property absent a warrant and over their objection, deprived them of property without due process in violation of Plaintiffs' constitutional rights. *See id.* at ¶¶ 106, 108. Lastly, Plaintiffs allege in Count XII that Defendants' actions, acting in concert, constituted a conspiracy to deprive them of their constitutional and statutory rights to be free from unreasonable seizures of their property. *See id.* at ¶ 112.

The "plain view" doctrine is a "well-recognized exception to the fourth amendment warrant requirement." *Ruggiero v. Krzeminski*, 928 F.2d 558, 561 (2d Cir. 1991) (citation omitted). Two conditions must be met before this exception to the warrant requirement applies. *See id.* at 561-62; *see also Horton v. California*, 496 U.S. 128, 140 (1990). First, "the initial intrusion by the police officer must be lawful so that he can justify being in a position to make his discovery." *Id.* at 561 (citations omitted). Second, the police "must have probable cause to believe that the item seized was evidence of a crime." *Id.* (citations omitted).

Here, law enforcement first arrived at Plaintiffs' home in direct response to Plaintiff Donna Veeder's phone call to the Albany County Sheriff's Department, in which she requested police assistance. *See* Dkt. No. 27 at ¶ 21. It is reasonable to infer that the initial entry by the Albany County Sherriff's Department was lawful as it was the result of implied consent by

11

Plaintiff Donna Veeder. A well-established exception to the warrant requirement is the individual's voluntary consent to a search, which can be express or implied. *See id.* (quoting *United States v. Parker*, 469 F.3d 1074, 1077-78 (7th Cir. 2006)); *see also United States v. Renken*, 474 F.3d 984, 987 (7th Cir. 2007) (noting that "consent in certain cases can be implied in the absence of clear verbal permission"). However, it is unclear at this time whether Plaintiff Donna Veeder's implied consent extended to the New York State Police Investigators.

After the employees of the Albany County Sherriff's Department and the EMTs exited Plaintiffs' home, Plaintiff Donna Veeder discovered a notebook, the outside of which was addressed to her and her attorney, containing documents and sealed envelopes. *See id.* at ¶¶ 24, 25. At this time, Plaintiff Donna Veeder assumed she was alone in her home and went upstairs, where she was then startled by the presence of Defendant Nutting. *See id.* at ¶¶ 28, 30. Defendant Nutting requested that Plaintiff Donna Veeder turn over the notebook to him, as it was "evidence," to which Plaintiff Donna Veeder refused. *See id.* at ¶¶ 32, 33. Defendant Nutting insisted on taking the notebook and did not permit Plaintiff Donna Veeder to open any of the contained envelopes before turning it over to him. *See id.* at ¶¶ 34, 36.

Plaintiff Donna Veeder then realized that additional members of the New York State Police were "conducting a room by room search of her house." *See id* at ¶ 37. No Plaintiff had invited any of the New York State Police officers into their home or granted any of the New York State Police officers permission to conduct any search. *See id* at ¶ 38.

In order for the "plain view" doctrine to justify the seizure of Plaintiffs' property, Defendants were required to be within Plaintiffs' home prior to the seizure. *See Horton v. California*, 496 U.S. 128, 136 (1990). Here, it is unknown whether Plaintiff Donna Veeder implicitly consented to allow investigators of the New York State Police to enter her home and

conduct a room by room search, after the Albany County Sherriff's Department had already left. Therefore, because Defendants subsequently seized property from Plaintiffs' home without a warrant, Defendants' motion to dismiss the seizure of Plaintiffs' personal property claims is denied.

### *2. Plaintiffs' Claim that Defendants' Unlawfully Seized Stacy Veeder*

Plaintiffs allege in Count V that Defendants unlawfully seized Plaintiff Stacy Veeder, which constituted a false arrest and deprivation of liberty without due process in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. *See* Dkt. No. 27 at ¶ 98.

A seizure of a person occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ." *United States v. Richardson*, 949 F.2d 851, 855 (6th Cir. 1991) (citations omitted). The test for determining if an officer has exerted such authority is not subjective, rather it is based on "whether the officer's words and actions would have conveyed . . . to a reasonable person" that their movement was being restricted. *See id.*

As noted above, Defendant Martin allegedly forced Plaintiff Stacy Veeder into an unmarked police automobile and held the door shut, preventing her from exiting. *See* Dkt. No. 27 at ¶¶ 44, 45. It is unclear from the record how long Plaintiff Stacy Veeder was held inside the police automobile before she was ordered back into her house to "get dressed" and then leave her home. *See id.* at ¶¶ 69, 74. Accepting as true all of the well-pleaded facts, the Court finds that Plaintiff Stacy Veeder's Fourth Amendment seizure claim is facially plausible, and therefore, the Court denies Defendants' motion for judgment on the pleadings as to this claim.

13

### E. Qualified Immunity

Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity is not merely immunity from damages but also "immunity from suit"). "[T]he salient question [in determining qualified immunity] is whether the state of the law . . . gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). As qualified immunity is an affirmative defense, the burden of pleading it falls on the defendants. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted); *see also Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (holding that "defendants bear the burden of showing that the challenged act was objectively reasonable" (citation omitted)).

The qualified immunity determination consists of two steps, which a court may consider in either order. *See Seri v. Bochicchio*, 374 Fed. Appx. 114, 116 (2d Cir. 2010) (citation omitted). The first step is to determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009) (citations omitted). The second is a determination of "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citation omitted). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Second Circuit has made clear that it disfavors granting qualified immunity at the motion to dismiss stage. *See McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (citing *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983) (noting that generally "the defense of qualified

14

immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted").

Here, immediately upon the discovery of her husband's body in the "detached outbuilding" next to her home, Plaintiff Donna Veeder contacted the Albany County Sheriff's Department. *See* Dkt. No. 27 at ¶ 21. In response to this phone call, the Albany County Sherriff's Department, EMTs, and investigators for the New York State Police arrived on scene and provided assistance. *See id.* at ¶¶ 21, 30. At this time, it is unclear to the Court how the investigators for the New York State Police were notified of Garry Veeder's death. After the members of the Albany County Sheriff's Department and the EMTs had left Plaintiffs' property, investigators for the New York State Police remained in Plaintiffs' house, a separate building from where Garry Veeder's body was discovered. *See id.* at ¶¶ 26, 31. No Plaintiff had invited any of the Defendants into their home and no Plaintiff granted any of the Defendants permission to conduct any search. *See id.* at ¶ 38.

Defendant Nutting then placed a phone call to Defendant Hogan, Attorney for the New York State Police, who authorized Defendant Nutting to go forward with the search of Plaintiffs' home and additionally authorized Defendant Nutting to "seize any items he wished from [P]laintiff's home." *See id.* at ¶ 61. Defendant Hogan did not limit this search or seizure to the building in which Garry Veeder was discovered or to items relevant to the potential criminal investigation. *See id.* Defendants then performed a "room by room search of [Plaintiffs'] house" and seized several items, including the notebook, sealed envelopes, and a briefcase. *See id.* at ¶¶ 37, 82. It is unclear what items were contained within the briefcase and whether any additional items were seized from Plaintiffs' home. Accepting as true all of the well-pleaded facts, the

15

Court finds that at this time Defendants are not entitled to the protection of qualified immunity and denies their motion.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Plaintiffs' claims against the New York State Defendants in their official capacities are **DISMISSED with prejudice**; and the Court further

**ORDERS** that Defendants Burns, Strack, McDonald, Gilliam, Valoze, Hard and John Doe1 are **DISMISSED** for lack of personal involvement; and the Court further

**ORDERS** that all additional pretrial matters are referred to Magistrate Judge Homer; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 2, 2012
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge