**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DONNA VEEDER, STACY VEEDER and**
**BRENDAN VEEDER,**

                                **Plaintiffs,**

    vs.                                                                 1:10-cv-00665
                                                                            (MAD/DRH)

**STEVEN NUTTING, Individually and in his**
**Official Capacity as an Investigator for the**
**New York State Police; DAVID BURNS, Individually**
**and in their Official Capacity as Investigators for the**
**New York State Police; ROBERT J. MARTIN, Individually**
**and in their Official Capacity as Investigators for the New**
**York State Police; KELLY STRACK, Individually and in**
**their Official Capacity as Investigators for the New York**
**State Police; DREW McDONALD, Individually and in their**
**Official Capacity as Investigators for the New York State**
**Police; GEORGE PORT, Individually and in their Capacity**
**as Lieutenants for the New York State Police; STEPHEN**
**HOGAN, Individually and in their Capacity as an Attorney**
**for the New York State Police,**

                                **Defendants.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**OFFICE OF KEITH F. SCHOCKMEL**       **KEITH F. SCHOCKMEL, ESQ.**
4 Atrium Drive
Suite 290, Executive Woods
Albany, New York 12205
Attorneys for Plaintiffs

**OFFICE OF THE NEW YORK**              **KELLY L. MUNKWITZ, AAG**
**STATE ATTORNEY GENERAL**              **MICHAEL G. McCARTIN, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On June 8, 2010, Plaintiffs commenced this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants acted in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. *See* Dkt. No. 1. On May 6, 2011 and May 17, 2011, Plaintiffs filed a first and second amended complaint. *See* Dkt. Nos. 25 and 27. In a March 2, 2012 Memorandum-Decision and Order, the Court granted in part and denied in part Defendants' partial motion for judgment on the pleadings. *See* Dkt. No. 50. Specifically, the Court dismissed Plaintiffs' claims against the New York State Defendants in their official capacities and dismissed Defendants Burns, Strack, McDonald, Gilliam, Valoze, Hard and John Doe1 for lack of personal involvement. *See id.* at 16.

Currently before the Court is Plaintiffs' motion for reconsideration of the Court's March 2, 2012 Memorandum-Decision and Order or, in the alternative, Plaintiffs' motion to amend their second amended complaint. *See* Dkt. No. 51.

## II. BACKGROUND[1]

**A.    Relevant background**

On or about May 23, 2008, Garry Veeder, a civilian employee of the New York State Police, committed suicide in a detached outbuilding of his home. *See* Dkt. No. 27 at ¶ 20. Garry Veeder lived with his wife, Donna Veeder, and their two children, Stacy and Brendan Veeder, all Plaintiffs in the present action. *See id.* Plaintiff Donna Veeder discovered Garry Veeder's body, and a call was placed to the Albany County Sherriff's Department. *See* Dkt. No. 27 at ¶ 21. The Sherriff's Department responded to the scene, along with Emergency Medical Technicians ("EMTs"). *See id.*

At some point while Plaintiff Donna Veeder was in her house, a separate building from where Garry Veeder's body was discovered, she "noticed a notebook with a sticky-note on the outside addressed to [her] and her husband's attorney." *See id.* at ¶ 24. The notebook contained documents for the attorney, as well as "sealed envelopes addressed to each [P]laintiff" and additional family members. *See id.* at ¶ 25. Upon discovery of the notebook, Plaintiff Donna Veeder also became aware of the fact that "all members of the Sheriff's Department . . . had suddenly left the premises." *See id.* at ¶ 26. Plaintiff Donna Veeder, assuming she was alone, then carried the notebook upstairs, "so that the family could read the letters addressed to them when they became able." *See id.* at ¶ 27. At this time, Plaintiff Donna Veeder became startled by the presence of an unknown individual in her home, later identified as Defendant Steven Nutting, Investigator for the New York State Police. *See id.* at ¶ 29. Defendant Nutting was not wearing a uniform at the time. *See id.* Plaintiff Donna Veeder stated to Defendant Nutting, "[w]ho are you

---

[1] The facts contained in the "Background" section of this Memorandum-Decision and Order have been taken from the Court's March 2, 2012 Memorandum-Decision and Order.

3

and what are you doing in my house?" *See id.* In response, Defendant Nutting handed Plaintiff Donna Veeder an identification card, but he allegedly refused to explain why he was there. *See id.* at ¶ 31. Defendant Nutting then "ordered [Plaintiff] Donna Veeder to turn over the notebook containing the letters [to him] . . . stating that it was 'evidence.'" *See id.* at ¶ 32. When Plaintiff Donna Veeder refused, replying that the notebook was "her property" and stating that the letters inside were "addressed to her" and other family members, Defendant Nutting then allegedly stated "I can do anything I want, lady, this is a crime scene until I say otherwise." *See id.* at ¶¶ 33-34. Defendant Nutting did not allow Plaintiff Donna Veeder to open any of the envelopes. *See id.* at ¶¶ 35-36.

At this point, Plaintiff Donna Veeder "became aware that other [D]efendants were conducting a room by room search of her house." *See id.* at ¶ 37. No Plaintiff had invited any Defendant into their home, and no Plaintiff had granted any Defendant permission to conduct a search. *See id.* at ¶ 38. Two Defendants, one of whom was Defendant Martin, then followed Plaintiff Stacy Veeder into Plaintiff Brendan Veeder's bedroom, where she was typing an e-mail to her boyfriend. *See id.* at ¶ 39. Defendant Martin advised Plaintiff Stacy Veeder that her computer was evidence, and asked if her father had left a note on the computer. *See id.* at ¶ 40. Plaintiff Stacy Veeder, attempting to get away from Defendant Martin, left her brother's room and went into her own bedroom. *See id.* at ¶ 41. Defendant Martin then followed Plaintiff Stacy Veeder into her bedroom. *See id.* at ¶ 42. Plaintiff Stacy Veeder continued to try and get away from Defendant Martin and the other unidentified Defendant who were "following her from room to room," but was unsuccessful. *See id.* at ¶ 43. Defendant Martin and the other Defendant then allegedly forced Plaintiff Stacy Veeder into an unmarked police automobile, which she attempted to exit but could not because Defendant Martin was holding the door shut. *See id.* at ¶¶ 44-45.

4

At this time, Plaintiff Donna Veeder telephoned her attorney "for advice with regard to [D]efendant Nutting's demand that the notebook and letters . . . be given to him." *See id.* at ¶ 50. Plaintiff Donna Veeder's attorney advised her not to surrender the material to Defendant Nutting. *See id.* Plaintiff Donna Veeder's attorney then spoke with Defendant Nutting on the phone and told him that "he did not have permission to take the notebook and letters." *See id.* at ¶ 51. Defendant Nutting allegedly stated that "I can do anything I want, this is a crime scene unless I say otherwise." *See id.* at ¶ 52. Defendant Nutting then assisted Plaintiff Donna Veeder in contacting her daughter, who was stationed on an Army base at the time, to inform her of her father's death. *See id.* at ¶¶ 53-54.

After this, Defendant Nutting placed a phone call to Defendant Hogan, attorney for the New York State Police, to consult with him. *See id.* at ¶ 61. Defendant Hogan "authorized [D]efendant Nutting to search the [P]laintiffs' home without a warrant, [despite] [P]laintiffs' objection." *See id.* Defendant Hogan also authorized Defendant Nutting to "seize any items he wished from [P]laintiffs' home." *See id.* at ¶ 65. Defendant Nutting then placed a second phone call to Defendant "John Doe7," an Assistant District Attorney, who authorized Defendant Nutting to search the Plaintiff's home without a warrant and "seize any items he wished." *See id.* at ¶¶ 63, 67. At this point, Defendant Nutting told Plaintiffs to get dressed and leave the house. *See id.* at ¶ 69. Over Plaintiff Donna Veeder's objection, Defendant Nutting "took the notebook and letters away from [her]." *See id.* at ¶¶ 75, 76.

Plaintiffs then went to stay at a friend's house until Plaintiff Donna Veeder's afternoon doctor's appointment. *See id.* at ¶ 78. At the appointment, Plaintiff Donna Veeder was diagnosed with "dangerously elevated blood pressure requiring immediate attention." *See id.* at ¶ 79. After the appointment, Plaintiff Donna Veeder received a phone call from her brother stating that he

5

had "just read an article on the internet describing the contents of the notes which [D]efendant Nutting had taken from [P]laintiffs." *See id.* at ¶ 80. Additionally, local television news stations also reported on the "contents of the notes taken from [P]laintiffs." *See id.* at ¶ 81. Plaintiffs then returned to their home and discovered that Defendants had "conducted a thorough search of [their] home and taken a briefcase" that belonged to Plaintiff Donna Veeder. *See id.* at ¶ 82. At no time was any warrant to search or seize Plaintiffs' property issued. *See id.* at ¶¶ 83, 85.

On May 23, 2008, at approximately 3:30 p.m., the Albany County Coroner officially ruled Garry Veeder's death a suicide. *See id.* at ¶ 89. On May 27, 2008, Defendant George Port, Lieutenant for the New York State Police, opened and photocopied the letters that Garry Veeder had left for his family and attorney, and retained the copies. *See id.* at ¶ 90.

**B.     The Court's March 2, 2012 Memorandum-Decision and Order**

In its March 2, 2012 Memorandum-Decision and Order, the Court granted in part Defendants' motion for judgment on the pleadings. *See* Dkt. No. 50. Specifically, as relevant here, the Court found that "the only allegation against Defendants Burns, Strack, McDonald, Gilliam, Valoze, Hard and John Doe1 is that they are all employed, in some capacity, by the New York State Police. . . . Plaintiffs do not allege that these Defendants engaged in any of the alleged unconstitutional conduct, or that they engaged in any conduct that would subject them to supervisory liability." *See id.* at 9-10. As such, the Court dismissed these Defendants from this action for lack of personal involvement in the alleged unconstitutional conduct. *See id.* at 10.

**C.     Plaintiffs' motion**

6

In their motion to reconsider, Plaintiffs assert that their second amended complaint validly asserts causes of action against Defendants Burns, McDonald and Strack. *See* Dkt. No. 51-4 at 5-8. Plaintiffs contend that, at the time that they filed their second amended complaint, they were unaware which Defendants conducted the search of their home or had taken the briefcase in the search. *See id.* at 6. Plaintiffs claim that, through depositions, they have now learned that Defendant Strack and McDonald searched their home and seized the briefcase and that Defendant Burns was the lead investigator and authorized the search. *See id.* (citations omitted). Further, Plaintiffs assert that they now know that Defendant Burns spoke with Plaintiffs' attorney and was told that the New York State Police did not have consent to seize the notebook containing the letters, but that he did so anyway. *See id.* (citation omitted). Plaintiffs claim that they repeatedly referenced "Defendants" throughout the complaint and, therefore, their allegations against Defendants Burns, McDonald and Strack were not limited to simply stating that they are employed by the New York State Police. *See id.* at 7. In the alternative, Plaintiffs seek to amend their complaint and have attached a proposed third amended complaint. *See id.* at 9 (citation omitted).

Defendants oppose Plaintiffs' motion to reconsider and to amend. *See* Dkt. No. 52. Specifically, Defendants contend that Plaintiffs were provided all of the information they claim to have only learned through depositions prior to filing their second amended complaint. *See id.* at 1. As such, Defendants contend that this information cannot be considered "newly discovered evidence." *See id.* at 1-2. Further, Defendants contend that the Court should not consider this "new evidence" which was not before the Court when it decided Defendants' motion for judgment on the pleadings. *See id.* at 2.

As to the motion to amend, Defendants argue that the Court should deny the motion because the Uniform Pre-Trial Scheduling Order set December 28, 2010 as the cut-off date for the filing of amended pleadings and the dispositive motion deadline is April 30, 2012. *See id.* Defendants argue that Plaintiffs have not established good cause to allow this untimely amendment of the second amended complaint. *See id.* Moreover, Defendants claim that granting Plaintiffs' motion to amend would unduly prejudice Defendants, especially considering that the "allegations in the complaint date back almost four years[.]" *See id.*

### III. DISCUSSION

**A.     Plaintiffs' motion to reconsider**

Motions for reconsideration proceed in the Northern District of New York under Local Rule 7.1(g). *See Maye v. New York*, No. 1:10-cv-1260, 2011 WL 4566290, *2 n.6 (N.D.N.Y. Sept. 29, 2011). "'In order to prevail on a motion for reconsideration, the movant must satisfy stringent requirements.'" *Id.* (quoting *C–TC 9th Ave. P'ship v. Norton Co. ( In re C–TC 9th Ave. P'ship )*, 182 B.R. 1, 2 (N.D.N.Y. 1995)). A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995). "The prevailing rule 'recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice.'" *Maye*, 2011 WL 4566290, at *2 (quoting *In re C–TC 9th Ave. P'ship*, 182

B.R. at 3). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

Contrary to Plaintiffs' assertions, the Court's March 2, 2012 Memorandum-Decision and Order dismissing several Defendants was not clear error of law. As noted, the only allegations against Defendants Burns, Strack, McDonald, Gilliam, Valoze, Hard and John Doe1 in the second amended complaint are that they are all employed, in some capacity, by the New York State Police. Such allegations are clearly insufficient to establish these Defendants' personal involvement in the alleged unconstitutional conduct. *See Dyer v. Lumpkin*, No. 01 C 1691, 2001 WL 1001126, *4 (N.D. Ill. Aug. 23, 2001) (finding the complaint insufficient to survive the defendants' motion to dismiss where the plaintiff failed to mention any defendant by name in any allegation, "[o]ther than the introductory paragraphs setting forth who the individual defendants are . . .").

Moreover, some of what Plaintiffs claim to be "newly discovered evidence" was in their possession prior to the time that they filed their second amended complaint. Although the depositions did not occur until after the second amended complaint was filed, some of the information that was learned at the depositions was contained in the investigation files that were provided to Plaintiffs' before filing their amended pleading. This evidence does not qualify as "new evidence" sufficient to warrant reconsideration. *See United States v. City of New York*, ___ F. Supp. 2d ___, 2012 WL 745560, *13 (E.D.N.Y. Mar. 8, 2012).

Based on the foregoing, the Court denies Plaintiffs' motion for reconsideration of its March 2, 2012 Memorandum-Decision and Order.

**B.    Plaintiffs' motion to amend their second amended complaint**

9

Leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Notwithstanding this lenient standard, the decision to grant or deny leave to amend is within the discretion of the district court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court may properly deny leave to amend for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.*; *see also SCS Commc'ns, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004) (holding that "under Fed. R. Civ. P. 15(a), leave to amend a pleading may only be given when factors such as undue delay or undue prejudice to the opposing party are absent"). However, "mere delay is not, of itself, sufficient to justify denial of a Rule 15(a) motion." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000).

"Although Rule 15(a) governs the amendment of pleadings, Rule 16(b) also may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007). Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause [.]" Fed. R. Civ. P. 16(b)(4). The Second Circuit has held that, where a district court has set a deadline for amending pleadings, "the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline[.]" *Parker*, 204 F.3d at 340; *see also Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009).

"A finding of good cause depends on the diligence of the moving party." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (affirming denial of leave to amend where the plaintiffs delayed more than one year, discovery had been completed and a summary judgment motion was pending). "[T]he good cause standard is not satisfied when the proposed amendment

10

rests on information 'that the party knew, or should have known, in advance of the deadline.'" *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) (citation omitted) (finding that the plaintiff acted with diligence in seeking leave to amend within two months of discovering the facts underlying its new cause of action); *but see Jackson v. Roslyn Bd. of Educ.*, 596 F. Supp. 2d 581, 586 (E.D.N.Y. 2009) (finding that the plaintiff's delay of nearly five months evinced "a lack of diligence").

Although the moving party's diligence is a district court's "primary consideration" in its Rule 16(b) good cause inquiry, the court "also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner*, 496 F.3d at 244. An amendment is prejudicial to the non-moving party if it "would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quotation omitted).

In the present matter, Defendants are correct that the date set for the filing of amended pleadings in the Uniform Pre-Trial Scheduling Order has already passed. It appears from the record before the Court, however, that Plaintiffs did not become fully aware of the facts surrounding their claims until depositions were completed in December of 2011. *See* Dkt. No. 51-1 at ¶ 17. Plaintiffs moved to amend their complaint a little more than three months after the date in the Scheduling Order, and in response to the Court's March 2, 2012 Memorandum-Decision and Order. Since Plaintiffs learned of these necessary facts during the course of discovery and filed their motion to amend their complaint within a reasonable time after discovering these facts, the Court finds that Plaintiffs acted diligently in filing their proposed amended complaint. *See Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y.

11

2010) (finding that filing a motion to amend two months after acquiring the new information is sufficient to show diligence) (citation omitted).

Moreover, the Court finds that any prejudice to Defendants will be minimal. The proposed amendments relate to Defendants who were previously part of this action and whose depositions have already been taken. Therefore, any delay will be minimal. As such, the Court is satisfied that, if the proposed amendments meet the requirements of Rule 15 of the Federal Rules of Civil Procedure, good cause exists to permit an extension of this deadline.

As discussed, the Court finds no undue delay or bad faith on Plaintiffs' part in bringing their motion to amend. Further, Defendants will suffer little prejudice if the Court permits Plaintiffs to amend. Finally, the Court has reviewed the proposed third amended complaint and finds that permitting such amendment would not be futile. Plaintiffs have now sufficiently alleged the personal involvement of Defendants Burns, McDonald and Strack, curing the deficiencies discussed in the Court's March 2, 2012 Memorandum-Decision and Order.

Based on the foregoing, and in the interests of reaching "'a proper decision on the merits,'" the Court grants Plaintiffs' motion to amend their complaint. *See Enzymotec Ltd.*, 754 F. Supp. 2d at 538 (quotation omitted). Plaintiffs are directed to file and serve their third amended complaint within **twenty (20) days** of the date of this Memorandum-Decision and Order.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion for reconsideration is **DENIED**; and the Court further

**ORDERS** that Plaintiffs' motion to amend their complaint is **GRANTED**;[2] and the Court further

**ORDERS** that Plaintiffs shall file and serve their amended complaint within **TWENTY (20) DAYS** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the dispositive motion deadline shall be extended until **June 10, 2012**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 24, 2012
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[2] As discussed, Plaintiffs' proposed third amended complaint adds factual allegations against Defendants Burns, McDonald and Strack, thereby alleging their personal involvement in the alleged unconstitutional conduct.

13